Filed 3/26/24; Certified for Publication 4/3/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GREGORY TERENCE BROWN, <br><br> Defendant and Appellant. | D081445 <br><br><br> (Super. Ct. No. SCD287766) |

APPEAL from a judgment of the Superior Court of San Diego County, Yvonne E. Campos, Judge.  Reversed and remanded with instructions.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Melissa Mandel, Deputy Attorney General, for Plaintiff and Respondent.

## I.  INTRODUCTION

The People charged Gregory Terence Brown with aggravated mayhem and assault with a deadly weapon.  Brown was initially declared incompetent and, after his competency was restored, he moved the court for an order for

pretrial mental health diversion pursuant to Penal Code section 1001.36.[1] The trial court denied the request, and the case proceeded to trial. Brown was convicted in November 2022 and sentenced on January 11, 2023, ten days after the effective dates of certain amendments to section 1001.36.

Brown argues that the trial court erred in denying his motion for mental health diversion and asserts, in the alternative, that the recent amendments to section 1001.36 are retroactive and that therefore the matter must be remanded to the trial court to allow reconsideration of his request for diversion under the amended statute. The People assert that Brown waived his retroactivity argument by failing to bring a motion for reconsideration in the trial court prior to sentencing. Brown disputes that he forfeited the issue, and argues, in the alternative, that any forfeiture resulted from ineffective assistance of counsel.

We conclude the trial court did not err in denying the motion in 2022, but that the recent amendments are retroactive, and, under the narrow circumstances presented here, Brown did not forfeit his right to assert retroactivity by failing to bring a motion to reconsider in the trial court. Accordingly, we conditionally reverse the judgment and remand the matter to the trial court for further consideration under the amended statute.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Brown was arrested in October of 2020, based on an incident in which he assaulted a neighbor with a metal cane, causing serious injuries, after the neighbor knocked on his door and accused him of stealing a doorstop. The People charged Brown with one count of aggravated mayhem (count 1), and one count of assault with a deadly weapon (count 2). They alleged further in

---

[1] All further unspecified statutory references are to the Penal Code.

count 1 that Brown personally used a deadly weapon within the meaning of section 12022.7, subdivision (b)(1), and in count 2 that Brown personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a), and personally used a dangerous and deadly weapon within the meaning of section 1192.7, subdivision (c)(23).

The trial court held a mental competency hearing under section 1368 on October 4, 2021, prior to trial. The court found that Brown was not mentally competent and ordered that he receive treatment at Patton State Hospital. In May 2022, the court ruled that Brown's competency had been restored and set the matter for further proceedings. Brown's competency was again questioned in June 2022, but in August, the trial court deemed him competent once again.

In September 2022, Brown filed a motion seeking mental health diversion under section 1001.36, which allows for the postponement of prosecution so that a defendant can undergo mental health treatment. Brown asserted that he had been diagnosed with schizophrenia during his military service in his twenties and hospitalized as a result. He continued to suffer from schizophrenia, and had been homeless on and off for over 30 years. He argued that he was peaceful and nonaggressive when properly medicated, and had no history of aggressive or antisocial behavior prior to the incident leading to the charges.

Brown included a report in support of the motion from Dr. Abraham Loebenstein, who conducted a psychological evaluation of Brown. Dr. Loebenstein opined that Brown met the criteria for mental health diversion. He diagnosed Brown with schizophrenia and alcohol use disorder and noted that although Brown "becomes delusional and paranoid when not complying with his medication," he was not "typically aggressive" and did not "harbor

3

violent and antisocial attitudes." He noted further that Brown had been medicated in the past, but was not at the time of the offense, and noted that Brown had improved while in jail, likely because he was medication compliant and did not have access to alcohol. He concluded that Brown's mental health issues played a significant role in the offense, and opined that Brown's "behavior can improve with both medication compliance and from abstaining from alcohol."

Dr. Loebenstein further opined that Brown was willing to engage in treatment, but added a caveat: "[Brown's] willingness to participate in treatment will therefore likely be dependent upon his ability to maintain medication adherence once he is released from jail." He stated firmly that Brown's symptoms would respond well to treatment (i.e. medication), and that he did not pose an unreasonable risk to public safety, "provided that he remains adherent to his psychiatric medications, and he avoids alcohol." Dr. Loebenstein conceded that Brown "can become quite deteriorated when not medication compliant."

The trial court held a hearing on Brown's diversion motion on October 12, 2022. The court found that Brown did suffer from a mental health disorder but that the disorder did not contribute in any way to the offense. The court also raised concerns regarding Brown's willingness to comply with treatment and concluded he would pose an unreasonable risk to public safety. Accordingly, the court denied Brown's request for diversion.

The case proceeded to trial and, on November 17, 2022, a jury found Brown guilty of the lesser-included offense of mayhem in count 1, and guilty of assault with a deadly weapon in count 2. The jury also found that Brown personally used a deadly and dangerous weapon and personally inflicted great bodily injury in the commission of the assault, and found true

4

allegations that the victim was vulnerable and that the offense involved great violence or other acts disclosing a high degree of cruelty, viciousness or callousness. On January 11, 2023, the trial court sentenced Brown to nine years in prison.

### III. DISCUSSION

On appeal, Brown argues that the trial court abused its discretion in denying his original motion for pretrial diversion based on findings that his diagnosed schizophrenia did not contribute to the commission of the offense and that he posed an unreasonable risk to the community even if in treatment. As to the first factor, he also asserts that "remand is necessary for the court to address the recent changes in the law." The People contend that the trial court did not abuse its discretion by denying Brown's original request for mental health diversion, and that Brown forfeited any request for reconsideration under the amended statute by failing to ask the trial court to reconsider his diversion motion at any point before or during the sentencing proceedings.

### A. *Relevant Statutory History*

Since 2018, section 1001.36 has afforded trial courts discretion to grant criminal defendants suffering from certain recognized mental disorders pretrial diversion to receive mental health treatment. (Former § 1001.36, subd. (a), originally enacted by Stats. 2018, ch. 34, § 24, eff. June 27, 2018; Assem. Bill No. 1810 (2017-2018 Reg, Sess.).) "The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion

5

that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)−(c).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

In September 2022, when Brown first brought his motion for mental health diversion, section 1001.36 listed six criteria that a defendant had to meet to be eligible for diversion. The first, second, and sixth required that the court be "satisfied" that (1) the defendant suffered from a recognized mental disorder, (2) the disorder was a "significant factor in the commission of the charged offense," and (3) "the defendant [would] not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community." (Former § 1001.36, subd. (b)(1)(A)−(B), (F), as amended by Stats. 2022, ch. 47, §38 (Sen. Bill No. 184, eff. June 30, 2022 to Dec. 31, 2022.)[2] The remaining criteria required that a mental health expert provide an opinion that the defendant's mental health symptoms would respond to treatment; that the defendant give their consent to waive their right to a speedy trial to participate in diversion; and that the defendant agree to comply with treatment as a condition of diversion. (*Id.*, subd. (C)−(E).)

"In successive versions of section 1001.36, the Legislature has provided increasingly detailed guidance for deciding whether a defendant qualifies for diversion." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) As relevant here, a series of amendments to section 1001.36 became effective on January 1, 2023, after Brown's conviction, but prior to his

---

[2]     Hereafter we will refer to this version as the 2022 amendment.

sentencing.[3] (§ 1001.36, subd. (b), as amended by Stats. 2022, ch. 735, §1, eff. Jan. 1, 2023 to Dec. 31, 2023.)[4] Among other changes, the 2023 amendments recharacterized the first two requirements—that the defendant be diagnosed with a recognized mental illness and that the mental illness be a significant factor in the commission of the charged offense—as eligibility criteria. (§ 1001.36, subd. (b).)

Thus, as this court recently explained: "Effective January 1, 2023, mental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program. The criteria for each are specified in the statute. (§ 1001.36, subds. (b) & (c).)" (*Sarmiento, supra,* 98 Cal.App.5th at p. 891.) Under the amended statute, "a defendant's eligibility no longer turns on findings to the court's 'satisfaction.' " (*Ibid.*) Rather, a defendant is generally eligible for diversion if the defendant "has been diagnosed" with a recognized mental disorder. (§ 1001.36, subd. (b); *Sarmiento*, at p. 891.) Beyond that, the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime, "unless there is clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

If the defendant meets the two enumerated eligibility requirements, "the court must consider whether the defendant is suitable for pretrial

---

[3] The Legislature has amended section 1001.36 twice more since January 1, 2023. The additional amendments are not material here and we therefore quote the statute in its current form throughout the remainder of this opinion.

[4] Hereafter we will refer to this version as the 2023 amendments.

diversion." (§ 1001.36, subd. (c).) "A defendant is suitable for pretrial diversion if all of the following criteria are met:" (1) "In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment"; (2) "The defendant consents to diversion and waives the defendant's right to a speedy trial"; (3) "The defendant agrees to comply with treatment as a condition of diversion"; and (4) "The defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community."

As used in section 1001.36, subdivision (c)(4), " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of [667, subdivision (e)(2)(C)(iv)]." (§ 1170.18, subd.(b).) Section 667, subdivision (e)(2)(C)(iv) in turn, includes an enumerated list of specific categories of serious and violent offenses, including, among others, sexually violent offenses, sex acts against minors, homicide, and other serious felonies punishable by life imprisonment or death. Thus, the courts have held that the "unreasonable risk of danger" criteria is limited to a narrow set of statutorily defined violent felonies. (*Sarmiento, supra,* 98 Cal.App.5th at p. 892.)

"Assuming the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.' (§ 1001.36, subd. (f)(1)(A)(i); see *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079 (*Gerson*).)" (*Sarmiento, supra,* 98 Cal.App.5th at p. 892.) "Finally, even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion." (*Ibid.*) "But this 'residual'

discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' " (*Ibid.*)

## B. *The Court Did Not Abuse Its Discretion by Denying Brown's Pretrial Diversion Motion in October 2022*

We turn first to the trial court's ruling on Brown's motion for diversion, which occurred on October 12, 2022, under the 2022 amendment.

We review the trial court's factual findings as to the enumerated statutory criteria for substantial evidence. (*Gerson, supra,* 80 Cal.App.5th at p. 1079.) Under this deferential standard of review, " 'we must view the evidence in the light most favorable to the People and must presume in support of the judgment of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*Ibid.*) We review the trial court's ultimate decision whether to grant the request, after considering its findings as to each of the relevant criteria, for abuse of discretion. (*Id.* at p. 1080.)

In ruling on Brown's motion, the trial court acknowledged that section 1001.36 provides specific criteria for courts to consider in deciding whether to grant diversion.[5] It began with the first enumerated criterion as set forth in

---

[5] For ease of reference, in October 2022, section 1001.36, listed the following criteria, in relevant part, for the trial court to consider in granting pretrial diversion:

> "(A) The court is satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder.

9

the 2022 amendment, and found that Brown did suffer from both alcohol dependence disorder and schizophrenia, the latter of which was recognized as a qualifying disorder. As to the second criterion, the trial court noted that Brown was not on any medication at the time of the offense, and had not been for years, but was using alcohol on a daily basis. The court then discussed the circumstances of the offense, including that when a witness told Brown they were going to call the police, Brown responded by stating "I don't care. She was knocking on my fucking door." In the trial court's view, this response was wrong, but also "rational" and "not delusional." Thus, the court concluded that there was no evidence that Brown's mental health "had anything to do with the incident, let alone [a] significant [factor]."

As to the third criterion, whether Brown's symptoms would respond to treatment, the trial court noted that Brown had gotten better while in custody and concluded, "being on meds has been helpful to him. But what's really been helpful, I think, in terms of his judgment is being off alcohol because, presumably since he's been in custody, he's been sober." The court found the fourth criterion had been met, since Brown did consent to diversion

---

"(B) The court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense.

"(C) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment.

"(D) The defendant consents to diversion and waives [their] right to a speedy trial.

"(E) The defendant agrees to comply with treatment as a condition of diversion.

"(F) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."

10

and waive his right to a speedy trial. However, it went on to raise concerns regarding the fifth criterion, whether Brown would comply with treatment. The court noted that Brown had refused to cooperate with mental health professionals both in the past and at the outset of this case, and that he had refused to take medication.

The trial court's greatest concern, though, was the final criterion, whether Brown would pose an unreasonable risk to the public while in diversion. The court noted that, when asked what he would do in the future, Brown's statement that he would call 911 or hide indicated that he still believed that he was the victim. The court found that Brown lacked insight, that he previously decided to viciously beat the victim over a minor altercation, and that he could be "triggered" again in a similar manner. Accordingly, it concluded that Brown would pose an unreasonable risk of danger to the public.

Brown asserts the trial court erred by concluding that his mental health did not substantially contribute to the commission of the offense and by finding that he would pose an unreasonable risk of danger to public safety if treated in the community. He argues that the court improperly discounted Dr. Loebenstein's expert analysis regarding the impact of his schizophrenia and concluded, without adequate evidence, that his decision-making was impacted only by his dependency on alcohol.

We do not read the trial court's ruling so narrowly. The trial court acknowledged that Brown did have a diagnosed mental illness and that he was not on medication at the time of the offense. However, the trial court also noted that he had not been on medication at various times over the years and had not previously been involved in any other violent crimes. The court also relied on Brown's own statements at the time of the offense which, in its

11

view, suggested that Brown attacked the victim because he was upset that she was knocking on his door, and not because of some paranoid delusion.

At the time of the trial court's ruling, in October 2022, section 1001.36 required that the trial court be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense," and further specified that the court could reach that conclusion if it "concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense." (2022 amendment.) The statute did not raise any presumption that a defendant's diagnosed mental disorder was a significant factor in the commission of the underlying offense. Instead, the trial court was entitled to weigh the evidence and make a factual determination as to this criterion. Our review is limited to whether substantial evidence supports that finding.

Under the statutory framework, as it stood in October 2022, we conclude that it was reasonable for the trial court to infer from the totality of evidence—including Brown's contemporaneous statements—that Brown was not suffering from paranoia or delusions at the time of the offense, and that his diagnosed schizophrenia did not substantially contribute to his commission of the offense. While, in our view, there is at least some evidence to support the opposite conclusion—that Brown's unmedicated schizophrenia was a significant factor in a more subtle sense, insofar as it informed his reaction to the perceived confrontation, and thus, the commission of the crime—under the applicable standard of review, we may not substitute our own judgment for that of the trial court, and instead must defer to the trial court's weighing of the evidence. (See, *Gerson, supra,* 80 Cal.App.5th at p. 1086 [it is not within the appellate court's province to reweigh the evidence where there is at least some support for two different inferences].)

In addition, the trial court did not rely solely on the impact of Brown's schizophrenia on the crime in denying the request for diversion. Rather, the trial court expressed even greater concern that Brown would pose an unreasonable risk of danger to public safety. To deny diversion based on this final factor, the trial court had to conclude that there was an unreasonable risk that Brown would commit a serious, violent felony of the type enumerated in section 667, subdivision (e)(2)(C)(iv). (See §§ 1001.36, subd. (c)(4); 1170.18, subd.(b).) The jury convicted Brown of mayhem and assault with a deadly weapon, and found true an allegation that the victim was vulnerable and the offense involved great violence and a high degree of cruelty, viciousness or callousness, and the court expressed concern about his lack of insight and remorse. From this, the trial court could reasonably infer that there was a significant risk that Brown could commit an even more serious, violent felony in the future, and therefore posed an unreasonable risk under section 1001.36, subdivision (c)(4). (See *People v. Pacheco* (2022) 75 Cal.App.5th 207, 214 [facts surrounding conviction for arson raised inference of risk that defendant could commit murder by arson in the future].)

Brown relies on *People v. Moine* (2021) 62 Cal.App.5th 440 and *People v. Williams* (2021) 63 Cal.App.5th 990. In each, the appellate courts found that the defendant's prior convictions for making criminal threats and stalking, respectively, were not sufficient to support an inference of unreasonable risk going forward. But those cases are not instructive here. (See *Moine,* at p. 443; *Williams* at p. 993.) Brown did not just threaten or intimidate the victim in this case—he invoked extreme physical violence against a vulnerable victim in response to a relatively minor altercation. And, as the trial court pointed out, Brown continued to believe he was the

victim, raising a reasonable inference that he may react similarly, or even more severely, to perceived conflict in the future.

Brown reiterates that the trial court improperly discounted the role that his schizophrenia played in the altercation, as well as Dr. Loebenstein's opinion that he would not pose a significant risk so long as he stayed compliant with his medication. Although Dr. Loebenstein's opinion is evidence that would support the opposite finding—that Brown would not continue to pose an unreasonable risk if medicated—it is not the only evidence that the trial court considered. For the same reasons we have explained with respect to the court's finding regarding the significance of Brown's schizophrenia to the circumstances of the offense, the existence of some evidence in support of either conclusion is not a sufficient basis for this court to supplant the findings of the trial court. (See, *Gerson, supra,* 80 Cal.App.5th at p. 1086.)

Nonetheless, as we explain next, Brown is entitled to remand and reconsideration of his motion under the current statute, as amended in January 2023.

## C.  *Brown Is Entitled to Remand Due to the Intervening Statutory Amendments*

Setting aside the trial court's denial of his request for mental health diversion in October 2022, Brown asserts that the 2023 amendments to section 1001.36 are retroactive and that he is entitled to remand so that the trial court may reconsider his request in light of those amendments. We agree.

In *Frah,* our high court concluded the original enactment of section 1001.36 applied retroactively to all nonfinal judgments. (*Frah, supra,* 9 Cal.5th at pp. 626, 630−631.) In reaching that conclusion, the Court

explained that section 1001.36 "offers a potentially ameliorative benefit for a class of individuals—namely, criminal defendants who suffer from a qualifying mental disorder," invoking the *Estrada*[6] rule and raising an inference of retroactivity, and the Legislature did not clearly signal its intent to overcome that inference. (*Id.* at pp. 631–632.)

The Court addressed the inherent conflict between the stated focus on *pretrial* diversion in section 1001.36, and the fact that retroactivity would necessarily require consideration of diversion *after* trial and adjudication had already occurred in some cases. (*Frah, supra,* 9 Cal.5th at p. 633.) The Court concluded the language of the statute was intended to explain "how the mental health diversion program will ordinarily function: In the normal course of operations, a trial court would determine before trial whether a defendant is eligible for pretrial diversion." (*Ibid.*) However, that same language did not "demonstrate a legislative intent to 'modify, limit, or entirely forbid the retroactive application of ameliorative criminal-law amendments.' " (*Id.* at pp. 633–634.)

This same reasoning applies to the amendments to section 1001.36 that became effective on January 1, 2023. (See *Frah, supra,* 9 Cal.5th at pp. 631–632; *People v. Doron* (2023) 95 Cal.App.5th 1, 6–7 (*Doron*) [applying *Frah* and concluding the January 2023 amendments to section 1001.36 likewise apply retroactively].) The amendments are ameliorative. (*Doron,* at p. 7.) They provide "increasingly detailed guidance for deciding whether a defendant qualifies for diversion," and specifically decrease the burden on the defendant to establish one of the enumerated criteria—that their diagnosed

---

6    See *People v. Estrada* (1965) 63 Cal.2d 740.

mental health disorder was a significant factor in the commission of the crime. (*Sarmiento, supra,* 98 Cal.App.5th at p. 891.)

As the court in *Sarmiento* recently explained, "a defendant's eligibility no longer turn[s] on findings to the court's 'satisfaction.' Rather, defendants are generally eligible if they 'ha[ve] been diagnosed' with a recognized mental disorder. (§ 1001.36, subd. (b)(1).) Beyond that, the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime. The court is directed to find a causal connection 'unless there is clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' (*Id.*, subd. (b)(2).)" (*Sarmiento, supra,* 98 Cal.App.5th at p. 891.) And, as in the original enactment, there is nothing in the January 2023 amendment to signal the Legislature's intent to overcome the inference of retroactivity. (*Doron, supra,* 95 Cal.App.5th at p. 7.)

The People concede that the January 2023 amendments to section 1001.36 apply retroactively, but assert that Brown forfeited this issue by failing to raise it in the trial court. They argue that here, unlike the defendants in *Frahs* and *Doran*, Brown had the opportunity to request diversion under the amended statute but failed to do so. Specifically, they contend that Brown's trial counsel could, and should, have brought a motion for reconsideration of his prior request for mental health diversion at or before sentencing and, having failed to do so, Brown should now be precluded from raising the issue on appeal. In response, Brown asserts that any such request would have been untimely under *People v. Braden* (2023) 14 Cal.5th 791, and, in the event that we agree that he forfeited the issue, that forfeiture was the result of ineffective assistance of counsel.

16

A defendant may forfeit a right in a criminal case by failing to timely assert the right before the tribunal with jurisdiction to determine it. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) "However, neither forfeiture nor application of the forfeiture rule is automatic. [Citation.] Competing concerns may cause an appellate court to conclude that an objection has not been forfeited. [Citations.] Similar concerns may also cause an appellate court to refrain from applying the forfeiture bar." (*People v. McCullough* (2013) 56 Cal.4th 589, 593.)

Brown's sentencing hearing occurred just 10 days after the amendments became effective. At the sentencing hearing, defense counsel asked the court to grant Brown probation, and put significant emphasis on his mental health as the basis for that request. He argued Brown's schizophrenia impacted his entire life; that Brown had been living "on the edge of society" for nearly 40 years as a result, and that he did not really have any typical relationships with other people. He also pointed out that Brown was not medicated at the time of the incident, that Brown had previously presented as paranoid and rigid, consistent with his schizophrenia diagnosis, and that Brown's demeanor had changed significantly after his arrest, and since being medicated.

At sentencing, despite this emphasis on Brown's schizophrenia, and Dr. Loebenstein's expert opinion regarding the impact of that diagnosis on Brown's mindset at the time of the underlying offense, neither defense counsel, the prosecutor, nor the court acknowledged the court's previous ruling on Brown's request for mental health diversion, or the recent amendments to the mental health diversion statute. This lack of acknowledgment, despite defense counsel's emphasis on Brown's mental health, raises a reasonable inference that neither counsel nor the court was

17

fully cognizant of the amendments, or their potential retroactivity, at the time of the sentencing hearing. Courts generally decline to apply the forfeiture rule to a right derived from recent, unanticipated changes to the law. (See *People v. Edwards* (2013) 57 Cal.4th 658, 704–705; *People v. Black* (2007) 41 Cal.4th 799, 810; *People v. Turner* (1990) 50 Cal.3d 668, 703.) We likewise decline to do so here.

Because we decline to find forfeiture, we need not address Brown's assertion that his counsel was ineffective for failing to seek reconsideration of his request for diversion. However, we briefly address the parties' arguments regarding the timeliness of such a request under the rule recently announced in *Braden*. In *Braden* the California Supreme Court held that "to be timely, a request for diversion must be made before attachment of jeopardy at trial or the entry of a guilty or no contest plea, whichever occurs first." (*Braden, supra,* 14 Cal.5th 791 at p. 819.) Notably, though, there was no intervening statutory amendment at issue in *Braden*. Braden simply failed to raise *any* request for pretrial diversion until *after* a jury had convicted him. (*Id*. at pp. 800−801.)

"Relying primarily on the *Frahs* discussion of legislative intent," and the associated conclusion that pretrial diversion did not preclude retroactive application of the statute, Braden argued that the statute similarly did not preclude him from bringing a request for pretrial diversion for the first time after trial. (*Braden, supra,* 14 Cal.5th at p. 803.) In response, the Court explained that "*Frahs* addressed those defendants whose cases were disposed of before section 1001.36 went into effect. In that context it considered only whether the Legislature intended defendants, who had not had the opportunity to request mental health diversion in the trial court before the enactment, should be allowed to do so retroactively in cases pending on

18

appeal." (*Braden,* at p. 803.)  However, the Court pointed out that *Frahs* did not address the timeliness of such a request where retroactivity was not at issue, and concluded that in such cases, a defendant must bring a motion for mental health diversion "before attachment of jeopardy at trial or the entry of a guilty or no contest plea, whichever occurs first."  (*Id*. at pp. 803, 824.)

Here, as we have explained, Brown did bring a motion for mental health diversion prior to trial, as required under *Braden*.  However, when the court decided that motion, it did so under a statutory framework that the Legislature subsequently amended to be more favorable to defendants. Accordingly, this case falls somewhere between *Frahs* and *Braden*.  Under these very narrow circumstances, where ameliorative amendments became effective just days before Brown's sentencing, we cannot say with any certainty that a motion for reconsideration would have been untimely under *Braden*, or that Brown's counsel should have been aware of the need to bring one.  Rather, for the reasons we have explained, we decline to find forfeiture and find it more appropriate to remand the matter for further consideration under the amended statute.  While it may have been preferable for Brown's counsel to have moved for reconsideration of Brown's request at the time of sentencing, we cannot fault Brown's trial counsel for failing to seek reconsideration based on a recent amendment that had become effective only 10 days earlier, and that no court had yet found to be retroactive, particularly in light of *Braden*'s focus on the general requirement that such motions be brought prior to trial.

As a final matter, the People contend that remand is not necessary in any event because the trial court properly denied Brown's request for mental health diversion on the still valid, independent basis that he would pose an unreasonable risk to public safety.  We do not believe that this criterion can

19

be so readily separated from the newly enacted presumption that a defendant's diagnosed mental health disorder was a significant factor in the commission of the crime. This is particularly so in this case, where the trial court relied on Brown's lack of insight and decision-making ability to conclude that he posed an unreasonable risk, while simultaneously discounting Dr. Loebenstein's presumption that Brown was paranoid at the time of the offense. If the trial court accepts the presumption that Brown's diagnosed disorder was a significant factor in the commission of the crime— as it is now required to do absent clear and convincing evidence to the contrary—then it must also consider whether Brown's response to a future "trigger" might be different while under treatment.

Thus, as in *Doron*, "[w]e decline to conclude that on this record, the court would clearly reach the same conclusions about eligibility or suitability under the new law." (*Doron, supra,* 95 Cal.App.5th at p. 10.)

20

## IV.  DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the trial court with directions to reconsider whether Brown is eligible for mental health diversion under the current section 1001.36.  If the trial court determines Brown qualifies for diversion, it may grant diversion.  If the court determines Brown is ineligible for diversion, then the court shall reinstate the judgment of conviction.


KELETY, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

21

Filed 4/3/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY TERENCE BROWN,<br><br>    Defendant and Appellant. | D081445<br><br><br>(Super. Ct. No. SCD287766)<br><br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 26, 2024 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

cc:  All Parties